William T. IRWIN, Plaintiff–Appellant,

v.

Kathleen M. HAWK, Director, John T. Hadden; Bryan Bledsoe; R.E. Honsted; Nate Carrington and F.E. Delegal, Defendants–Appellees.

No. 92–8665.

United States Court of Appeals, Eleventh Circuit.

Dec. 15, 1994.

William T. Irwin, Miami, FL, Peter D. Muller, Savannah, GA, for plaintiff-appellant.

Paul G. Justice, Asst. U.S. Atty., Savannah, GA, Edmund A. Booth, Jr., Asst. U.S. Atty., Augusta, GA, for defendants-appellees.

Before BIRCH and DUBINA, Circuit Judges, and JOHNSON, Senior Circuit Judge.

PER CURIAM:

William T. Irwin appeals the dismissal of his civil rights action brought pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and certain claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*. For the reasons that follow we AFFIRM with the modification that the dismissal is without prejudice to Irwin's reassertion of his *Bivens* claims[1] after accomplishing exhaustion of his administrative remedies.

---

1. Initially, the district court granted defendants' motion, dismissing Irwin's RICO claims with prejudice for want of prosecution (because of his failure to file a RICO case statement after being instructed to do so) and dismissing the *Bivens* claims without prejudice for failure to exhaust administrative remedies. Subsequently, the district court granted Irwin's motion seeking relief from the dismissal order and judgment. The court then instructed Irwin to respond to the motion to dismiss and to file the RICO case statement. Irwin notified the court that because of his ill health and lack of access to certain legal materials he could not respond. Thereafter the court granted defendants' supplemental motion to dismiss after Irwin failed to respond to same or to file the RICO case statement. The district court did not address separately Irwin's RICO

In this case, the district court, *Irwin v. Quinlan,* 791 F.Supp. 301 (S.D.Ga.1992), relying upon *McCarthy v. Madigan,* 503 U.S. ——, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), determined that Irwin's *Bivens* claims were susceptible to exhaustion under the Bureau of Prison's ("BOP") administrative remedy procedure, 28 C.F.R. § 542.10 *et seq.* Where an exhaustion requirement is created by agency regulations, we review a district court's decision whether to require exhaustion for abuse of discretion. *Kobleur v. Group Hospitalization & Medical Servs., Inc.,* 954 F.2d 705, 711 (11th Cir.1992). To determine whether a district court has abused its discretion, we consider two questions: " '(1) whether requiring exhaustion in this case would further the policies underlying the doctrine, and (2) whether any exceptions to the doctrine are applicable.' " *Id.* (citation omitted).

In *McCarthy,* the Supreme Court held that a federal prisoner who initiates a *Bivens* claim *solely* for money damages need not exhaust the grievance procedure before seeking judicial review of his claim. 503 U.S. at ——, 112 S.Ct. at 1088. *McCarthy* reaffirmed "the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *Id.* at ——, 112 S.Ct. at 1086. Our court has identified the following policies underlying the exhaustion doctrine:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources ...; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

*Kobleur,* 954 F.2d at 711–12 (citations omitted).

■ When Congress clearly prescribes an administrative remedy, application of the exhaustion requirement is not a matter of judi-

cial discretion. *McCarthy,* 503 U.S. at ——, 112 S.Ct. at 1086. In determining whether exhaustion is required, the Court held that "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at ——, 112 S.Ct. at 1087. Applying this standard, the Court found that

> [t]he general grievance procedure [of the Bureau of Prisons] heavily burdens the individual interests of the petitioning inmate in two ways. First, the procedure imposes short, successive filing deadlines that create a high risk of forfeiture of a claim for failure to comply. Second, the administrative "remedy" does not authorize an award of monetary damages—the only relief requested by [the inmate] in this action.

*Id.* at ——, 112 S.Ct. at 1090. On the other hand, the Court did not find the interests of the Bureau of Prisons to weigh heavily in favor of exhaustion in *McCarthy.* *Id.* at ——, 112 S.Ct. at 1092. Consequently, the Court held that exhaustion was not required when an inmate seeks solely monetary relief. *Id.* at ——, 112 S.Ct. at 1088.

■ The Court in *McCarthy,* however, explicitly reserved ruling on whether an exhaustion of remedies requirement is appropriate in a case such as Irwin's, where the inmate seeks *both* monetary and injunctive relief. In a footnote to its opinion, the Court stated:

> Petitioner concedes that if his complaint contained a prayer for injunctive relief, exhaustion principles would apply differently. Were injunctive relief sought, the grievance procedure probably would be capable of producing the type of corrective action desired. Additionally, because of the continuing nature of conduct subject to injunctive relief, the short filing deadlines would pose less difficulty because the limitations period would be triggered anew by ongoing conduct.

*Id.* at ——, 112 S.Ct. at 1091 n. 5 (citation omitted).

In *Caraballo–Sandoval v. Honsted,* 35 F.3d 521 (11th Cir.1994) (per curiam), the prisoner sought *both* monetary and injunctive relief alleging that "prison officials placed [him] in dry cell and administrative detention

claims in its order of dismissal now before us. Irwin, however, does not challenge the dismissal of his RICO claims. Accordingly, he has aban-

doned that issue on this appeal. *See Rogero v. Noone,* 704 F.2d 518, 520 n. 1 (11th Cir.1983).

status without following proper procedures, and retaliated against him for securing an approved special visit for [his wife]." *Id.* at 524. We held that the district court properly dismissed the prisoner's claim for failure to exhaust administrative remedies. *Id.* at 525. Attempting to distinguish *Caraballo–Sandoval,* Irwin argues that assuming that his allegations have merit and "that the Director [of Prisons] himself and his wardens were involved in the various injuries to Mr. Irwin, it would be utterly naive to believe that the administrative process could possibly benefit Mr. Irwin in any way." Appellant's Supplemental Brief at 11.

Essentially, Irwin argues that it would be futile to pursue BOP administrative procedures because of the bias of the administrative process, an exceptional example noted in *McCarthy* when an administrative remedy may be inadequate. 503 U.S. at —, 112 S.Ct. at 1088. The Seventh Circuit rejected a prisoner's contention that exhaustion would be futile because "the higher-ups in the Bureau of Prisons are bound to turn down [his] remaining requests for relief, just as they turned down his other claims," by observing:

> No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Lightening may strike; and even if it doesn't, in denying relief the Bureau may give a statement of its reasons that is helpful to the district court in considering the merits of the claim.

*Greene v. Meese,* 875 F.2d 639, 641 (7th Cir.1989).

We find no merit in Irwin's general and conclusory allegation of bias that is unsup-ported by any evidence in the record. Moreover, the BOP's administrative remedy procedure is a three-tiered process that provides inherent insulation against potential bias and prejudice arising at the institutional level.[2] Accordingly, we AFFIRM.

---

**2.** The BOP's administrative remedy procedures is a three-tiered process whereby an inmate may redress the deprivation of any right to which he is entitled or to which he believes that he is entitled. *See generally* Administrative Remedy Procedure for Inmates, 28 C.F.R. § 542.10, *et seq.* The process commences with the inmate's presenting a complaint to a staff member at the facility where he or she is housed. 28 C.F.R. § 542.13(a). If this informal resolution is not successful, the inmate may file a formal written complaint, on the appropriate form, with the warden at the local institution level. 28 C.F.R. § 542.13(b). This complaint must be filed within fifteen days of the date on which the basis for the grievance occurred. If the inmate demonstrates a valid reason for the delay in filing, an extension in filing time shall be allowed. *Id.*

The warden has fifteen calendar days in which to respond to the complaint. 28 C.F.R. § 542.14. If unsatisfied with the warden's response, then the inmate may appeal within twenty days of the response to the regional director. 28 C.F.R. § 542.15. If unsatisfied at the regional level, then the inmate has thirty days from the date of the regional director's response to appeal to the general counsel. *Id.* Both the regional director and the general counsel have thirty calendar days to respond to an inmate's request for administrative remedy. An inmate has not fully exhausted his administrative remedies until he has appealed through all three levels. The appeal to the office of the general counsel is the final administrative appeal provided by the BOP. 28 C.F.R. § 542.15.