[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 01, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14785
Non-Argument Calendar

_____

D. C. Docket No. 06-20191-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TEDDY ALBERTO LIZON-BARIAS,
a.k.a. Teddy Alberto Lizon,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 1, 2007)

Before BIRCH, BLACK and FAY, Circuit Judges.

PER CURIAM:

Teddy Alberto Lizon-Barias appeals his convictions, following a jury trial, for one count of conspiracy to possess with intent to distribute one kilogram or more of heroin and one count of attempt to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(I) and 846. Lizon-Barias argues that the district court improperly interfered with his opening statement and his direct testimony, resulting in the denial of his constitutional rights to a fair trial, to testify, and to present a defense.[1] Second, Lizon-Barias argues that a confidential informant ("CI") was not qualified to render an expert opinion concerning the meaning of certain code words used in the drug trafficking business because the CI's opinions were not based on reliable methods or independent knowledge, and contends that the district court plainly erred in admitting such testimony. For the reasons set forth more fully below, we affirm.

I.

a. Opening Statement

We review for an abuse of discretion a claim that the district court improperly limited a defendant's opening statement. See United States v. Burns,

---

[1] Although Lizon-Barias makes a passing argument that the district court's actions during the proceedings also violated his right to counsel, he fails to offer any substantive argument on this issue in his brief. Accordingly, he has abandoned this issue. See Irwin v. Hawk, 40 F.3d 347, 347 n.1 (11th Cir. 1994).

298 F.3d 523, 543 (6th Cir. 2002) (stating a district judge's conduct of a trial, including opening statements, is reviewed for an abuse of discretion). An opening statement gives counsel the opportunity to state what evidence will be presented in order to make it easier for the jurors to understand what is to follow, and is not an occasion for argument. See United States v. Zielie, 734 F.2d 1447, 1455 (11th Cir. 1984), abrogated on other grounds by United States v. Chestang, 849 F.2d 528, 531 (11th Cir. 1988). "The scope and extent of the defendant's opening statement rests largely in the discretion of the trial court." United States v. Freeman, 514 F.2d 1184, 1192 (10th Cir. 1975) (persuasive authority). The court "can exclude irrelevant facts and stop argument if it occurs." Zielie, 734 F.2d at 1455. Because the purpose of an opening statement is to advise the jury of the facts of the case, the parties should avoid referring to evidence during opening statements that is even of questionable admissibility. See United States v. Adams, 74 F.3d 1093, 1097 (11th Cir. 1996).

During the opening statement, the district court interrupted defense counsel where counsel referred to the possibility of additional charges against Lizon-Barias and argued that Lizon-Barias engaged in acts completely unrelated to the purchase of heroin and that there was no evidence to even remotely link Lizon-Barias to an un-indicted co-conspirator identified as Chato. The court further intervened to rule

3

on the government's objection to counsel's reference to evidence of questionable admissibility, specifically, the substance of conversations between Lizon-Barias and an unknown man identified as Sandy, which it later determined was inadmissible hearsay. Although some of the court's interruptions occurred <u>sua sponte</u>, many were in response to objections raised by the government.

Despite the court's interjections, defense counsel was able to explain to the jury its theory that Lizon-Barias intended to purchase stolen lighting equipment for his club in the Dominican Republic, not heroin, and was able to assert that the evidence would show that he had no knowledge of the drugs or of the un-indicted co-conspirator Chato. Counsel was also able to assert that the evidence would establish certain facts about the CI that would undermine his credibility. Although the court's interruptions arguably affected the pace and continuity of counsel's opening statement, the court's evidentiary rulings and instructions to counsel regarding the impropriety of argument during the opening statement did not prevent the jury from understanding Lizon-Barias's theory of defense and the evidence to be presented in rebuttal of the government's case. Accordingly, the district court's interruptions were not an abuse of discretion.

b.     Direct Testimony

"A district court judge has wide discretion in managing the proceedings, he

4

may comment on the evidence, question witnesses, elicit facts not yet adduced or clarify those previously presented, and maintain the pace of a trial by interrupting or cutting off counsel as a matter of discretion." United States v. Day, 405 F.3d 1293, 1297 (11th Cir. 2005) (quotation omitted). Here, Lizon-Barias's argument focuses on the district court's evidentiary rulings during his direct testimony, which he contends improperly limited his constitutional right to present a complete defense.

We review a district court's rulings on the relevance of evidence for abuse of discretion. United States v. Todd, 108 F.3d 1329, 1332 (11th Cir. 1997). "[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).

The Federal Rules of Evidence provide that only relevant evidence is admissible. Fed.R.Evid. 402. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. While the district court is afforded a wide range of discretion in ruling upon relevance and the admissibility of evidence, we

have held that such discretion cannot be used to exclude evidence that is relevant, crucial, and necessary to a valid defense. Todd, 108 F.3d at 1332. Therefore, when proffered evidence is "of substantial probative value, and will not tend to prejudice or confuse, all doubt should be resolved in favor of admissibility." Id. (citations and quotations omitted).

Here, Lizon-Barias's proffered testimony concerning the substance of his conversations with Sandy, including Sandy's statements, made his defense that he was arranging the purchase of stolen lighting equipment and, thus, lacked the criminal intent to purchase heroin, more probable than it would have been without the testimony. See Fed.R.Evid. 401. Therefore, the proffered evidence is relevant. Despite its relevancy, however, the district court properly excluded such testimony as impermissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). As a general matter, hearsay is inadmissible at trial. Fed.R.Evid. 802. However, the Federal Rules of Evidence provide that the following is an exception to the hearsay rule:

> Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of

6

declarant's will.

Fed.R.Evid. 803(3).  We have stated that in order to admit a statement under Rule 803(3), "[t]he declarant's statement of mind must be relevant to some issue in the case."  United States v. Veltmann, 6 F.3d 1483, 1493 (11th Cir. 1993).

Contrary to Lizon-Barias's assertion, the "state of mind" exception to the hearsay rule does not apply in the instant case because Sandy's state of mind is not at issue.  Rather, Sandy's statements were being offered for their truth, specifically, to corroborate Lizon-Barias's testimony that he intended to purchase stolen lighting equipment, not heroin, and consequently, to show Lizon-Barias's state of mind at the time of the offense.  Although Sandy's statements were a significant component of Lizon-Barias's theory of defense, it was not crucial to the presentation of a valid defense, as demonstrated by the remainder of Lizon-Barias's testimony on his own behalf.  Lizon-Barias established that he had owned a nightclub in the Dominican Republic since 1994 and had made substantial improvements to that club in 1995, 1996, 2003, and 2004, documented by various photographs.  Lizon-Barias further established that he met a man named Sandy at the club and, in 2005, had discussions with Sandy concerning the purchase of lights for the interior and the exterior of the building.  Lizon-Barias continued to have discussions with Sandy about his budget for the equipment and had

researched the costs of different equipment with the help of his wife. Lizon-Barias admitted that he eventually learned that the equipment he had arranged to purchase was stolen. On cross-examination, Lizon-Barias further explained that he used code words such as "things" and "girls" to refer to the lighting equipment. Accordingly, the district court did not abuse its discretion in excluding testimony concerning Sandy's statements as inadmissible hearsay.

In addition, the district court similarly did not abuse its discretion in excluding extraneous details and additional photographs concerning Lizon-Barias's plans to expand his club. Such evidence would have been cumulative because Lizon-Barias's ownership of, and previous improvements to, the club had already been established. See Fed.R.Evid. 403. Moreover, in light of Lizon-Barias's testimony and additional explanation of his conduct on cross-examination, there was no "picture" remaining to be completed or unusual acts to be put in context by the additional details. Cf. United States v. Hurn, 368 F.3d 1359, 1366-67 (11th Cir. 2004) (indicating that the defendant has the right to present additional evidence where the government's selective presentation of evidence "cast[s] [the] defendant in an inaccurate, unfavorable light, or make[s] entirely legitimate, normal, or accepted acts appear unusual or suspicious") (discussing Todd, 108 F.3d at 1333-34; and United States v. Sheffield, 992 F.2d 1164, 1170 (11th Cir.

8

1993)).

Further, as to Lizon-Barias's argument concerning the district court's active questioning during his direct testimony, the record indicates that the district court intervened to question him in order to clarify his testimony, to prevent the introduction of hearsay, and to focus the testimony on events relevant to the issues at trial. As previously discussed, the court's intervention did not prevent Lizon-Barias from establishing the essential facts in support of his defense. For all these reasons, the district court's interruptions did not constitute an abuse of discretion and, consequently, did not violate Lizon-Barias's rights to a fair trial, to testify, or to present a defense.

## II.

As an initial matter regarding Lizon-Barias's challenge to the CI's testimony regarding code words used in drug trafficking, at trial, Lizon-Barias raised a limited objection to the substance of the CI's expert testimony, but did not question the CI's qualifications or expertise. Accordingly, to the extent that he now argues that the CI was not qualified to offer expert testimony, we review for plain error. United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003). Under plain error review, we, in our discretion, may correct an error where (1) an error occurred, (2) the error was plain, (3) the error affects substantial rights, and (4) "the error

seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732-36, 113 S.Ct. 1770, 1777-79, 123 L.Ed.2d 508 (1993).

While we have not specifically addressed a situation where a CI has been qualified to testify as an expert witness, we have held that "[l]aw enforcement officers may testify as to the meaning of slang or code words." United States v. Carrazana, 921 F.2d 1557, 1567 (11th Cir. 1991) (citing United States v. Brown, 872 F.2d 385, 392 (11th Cir. 1989)). Nevertheless, even if the district court erred in admitting testimony regarding slang and code words, we will review the district court's decision for harmless error. Id. (noting that, even excluding the officer's testimony regarding taped conversations, there was ample evidence that the defendant participated in a drug conspiracy); see also Fed.R.Crim.P. 52(a). Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In the instant case, the government failed to establish that the CI's testimony was the product of reliable principles and methods as required under Fed.R.Evid.

10

702. However, the district court did not plainly err by allowing the CI to testify as to the meaning of the slang words and phrases on the tapes. The CI testified that he had previously engaged in drug trafficking activities as a member of the Cali Cartel, had participated in over 100 drug cases as a CI, and was familiar with the code words used during drug activities. Thus, the CI had experience participating in drug cases in which such words were used. Defense counsel was able to cross-examine the CI concerning his interpretation of these words, but chose instead to focus his examination on the CI's former involvement in drug trafficking and previous removal from service as a CI. Defense counsel also had the opportunity to argue that the CI's opinion should be rejected because he received payments from the government for his work and admitted that he was a "very good liar." Further, Lizon-Barias does not assert on appeal that there was insufficient evidence to support his convictions.

In light of the foregoing, Lizon-Barias's convictions are

**AFFIRMED.**